**WO**                                                                                                          SVK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corey Demetries Roehl, | No. CV 10-2424-PHX-GMS (SPL) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, et al., | |
| Defendants. | |

Plaintiff Corey Demetries Roehl, who was in the custody of the Maricopa County Sheriff's Office (MCSO) in Phoenix, Arizona, filed this *pro se* civil rights action against various employees of the Maricopa County Sheriff's Office. (Doc. 13.)  The remaining Defendant—Maricopa County Sheriff Joseph M. Arpaio—moves for summary judgment on the remaining claims. (Doc. 32.)  Although the Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond, and the Court granted Plaintiff an extension of time, Plaintiff filed no response. (Docs. 35, 38.)[1]

The Court will grant the motion and terminate the case.

**I.    Background**

In his Second Amended Complaint, Plaintiff alleged that cells in the Durango Jail

---

[1]The Court also directed Plaintiff to pay the balance of the filing fee.  (Doc. 30.) Plaintiff paid the fee.

1  were overcrowded; his safety was threatened when he was assigned to a top bunk but not

2  provided a ladder or other means to safely access the top; and because there was insufficient

3  seating in the day room, he was forced to sit on an unsanitary floor to eat.  (Doc. 13.)  He

4  asserted that his constitutional rights were violated by these conditions and that Arpaio was

5  aware of the conditions and condoned them.  (Id.)  The Court directed Arpaio to answer and

6  dismissed the other Defendants.  (Doc. 14.)

7  **II.    Legal Standards**

8      **A.    Summary Judgment**

9      A court "shall grant summary judgment if the movant shows that there is no genuine

10  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

11  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under

12  summary judgment practice, the moving party bears the initial responsibility of presenting

13  the basis for its motion and identifying those portions of the record, together with affidavits,

14  which it believes demonstrate the absence of a genuine issue of material fact.  Id. at 323.

15      If the moving party meets its initial responsibility, the burden then shifts to the

16  opposing party who must demonstrate the existence of a factual dispute and that the fact in

17  contention is material, i.e., a fact that might affect the outcome of the suit under the

18  governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the

19  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

20  the non-moving party.  Id. at 250; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

21  475 U.S. 574, 586-87 (1986).  The opposing party need not establish a material issue of fact

22  conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require

23  a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank

24  of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

25      When considering a summary judgment motion, the court examines the pleadings,

26  depositions, answers to interrogatories, and admissions on file, together with the affidavits

27  or declarations, if any.  See Fed. R. Civ. P. 56(c).  At summary judgment, the judge's

28  function is not to weigh the evidence and determine the truth but to determine whether there

1   is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. The evidence of the non-movant is
2   "to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255. But,
3   if the evidence of the non-moving party is merely colorable or is not significantly probative,
4   summary judgment may be granted. <u>Id.</u> at 248-49. Conclusory allegations, unsupported by
5   factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>,
6   880 F.2d 1040, 1045 (9th Cir. 1989). <u>See</u> <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978,
7   984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers
8   is insufficient to raise genuine issues of fact and defeat summary judgment").

9         **B.**    **Conditions of Confinement**

10        A pretrial detainee's claim for unconstitutional conditions of confinement arises from
11   the Due Process Clause. <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). Detainees "retain the rights
12   afforded unincarcerated individuals"; thus, their conditions of confinement must not amount
13   to punishment. <u>Id.</u> at 531. A condition is punitive under <u>Bell</u> if it is "intended to punish,"
14   or is "excessive in relation to its non-punitive purpose," or "is employed to achieve
15   objectives that could be accomplished in so many alternative and less harsh conditions."
16   <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir. 2004). Thus, if a particular condition or
17   restriction is not reasonably related to a legitimate governmental objective or is arbitrary or
18   purposeless, a court may infer that the purpose of the action is punishment that may not be
19   inflicted on pretrial detainees. <u>See</u> <u>Bell</u>, 441 U.S. at 539. But if a particular condition or
20   restriction of pretrial detention is "reasonably related to a legitimate governmental objective,
21   it does not, without more, amount to 'punishment.'" <u>Id.</u> Legitimate, non-punitive
22   government interests include "ensuring a detainee's presence at trial, maintaining jail
23   security, and effective management of a detention facility." <u>Jones</u>, 393 F.3d at 932 (citing
24   <u>Hallstrom v. City of Garden City</u>, 991 F.2d 1473, 1484 (9th Cir. 1993)).

25        A pretrial detainee's due process rights are at least as great as a convicted prisoner's
26   Eighth Amendment rights. <u>Oregon Advocacy Ctr. v. Mink</u>, 322 F.3d 1101, 1120 (9th Cir.
27   2003). The Ninth Circuit has held that pretrial detainees' rights are comparable to prisoners'
28   rights under the Eighth Amendment, and so the same standards apply. <u>Frost v. Agnos</u>, 152

1   F.3d 1124, 1128 (9th Cir. 1998) (relying on Redman v. County of San Diego, 942 F.2d

2   1435, 1442 (9th Cir. 1991)).   Contra Jones, 393 F.3d at 931 (the "more protective"

3   Fourteenth Amendment standard applies to conditions of confinement when detainees have

4   not been convicted of a crime).  As a minimum standard, the Eighth Amendment requires

5   that prison officials ensure that inmates receive adequate food, clothing, shelter, sanitation,

6   and medical care, and take reasonable measures to guarantee inmates' safety.  Hoptowit v.

7   Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 832 (1994).

8   However, this does not mean that federal courts can or should interfere whenever prisoners

9   are inconvenienced or suffer de minimis injuries.  See Bell, 441 U.S. at 539 n.21 (noting that

10  a de minimis level of imposition does not rise to a constitutional violation).  "[T]he

11  circumstances, nature, and duration of a deprivation of these necessities must be considered

12  in determining whether a constitutional violation has occurred."  Johnson v. Lewis, 217 F.

13  3d 726, 731 (9th Cir. 2000); see also Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (a filthy,

14  overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel

15  for weeks or months).

16  **III.    Motion for Summary Judgment**

17       **A.    Parties' Contentions**

18            **1.    Defendant**[2]

19       Defendant asserts that MCSO operates its jails under standards set by Federal

20  Guidelines and Federal Court Orders.  (Doc. 33, DSOF ¶ 4.)  Like all MCSO facilities, the

21  operation of the Durango Jail has been reviewed by the American Jail Association, the

22  American Corrections Association, the U.S. Marshal's Office and the Federal Court system

23  to ensure that the jail facilities meet the required standards for appropriate housing of pretrial

24  detainees; the Durango Jail meets those standards.  (Id. ¶ 5.)  According to Defendant, recent

25  _____

26       [2]Defendant's motion is supported by his Statement of Facts (Doc. 33 (DSOF)); the
    affidavit of Lourdes Hernandez (id., Ex. 1, referencing grievances at Doc. 20); the affidavit
27  of William Wiscombe (Doc. 33, Ex. 2); Second Amended Judgment in Graves v. Arpaio,
    CV-77-0479-PHX-NVW (id. Ex. 3); the declaration of Peter Muthig (id., Ex. 4) and attached
28  discovery requests (Exs. A-C) and Plaintiff Responses (Exs. D-F).

facility inspections by the Department of Justice overseeing <u>Graves v. Arpaio</u>, CV 77-0479-PHX-NVW, have found Durango Jail to be operating within Federal Guidelines and in compliance with <u>Graves</u>.  (<u>Id.</u> ¶ 6.)

The judgment in <u>Graves</u> applies to the Towers Jail facility and prohibits "more than two pretrial detainees in one cell at the Towers jail if the pretrial detainees usually are confined to their cell for twenty-two hours or more per day."  (<u>Id.</u> ¶ 9.) The judgment does not apply to the Durango Jail.  (<u>Id.</u> ¶ 8.).  Moreover, at Durango, inmates are not physically confined to their cells because all general-population cells have had their doors removed.  (<u>Id.</u> ¶ 7.)

The cells and general accommodations at the Durango Jail have been reviewed and approved as appropriate by the Department of Justice.  (<u>Id.</u> ¶¶ 1-3, 10.)  Thus, the housing of four inmates per cell in the Durango Jail has been found to be appropriate.  (<u>Id.</u> ¶ 11.)

Defendant concedes that the cell where Plaintiff was housed at the Durango Jail had both upper and lower bunks; Plaintiff's cell did not have a ladder or steps providing access to the upper bunk.  (<u>Id.</u> ¶¶ 12-13.)  But Defendant contends that the Durango Jail facility has been inspected by government agencies, including the Department of Justice, and the double-bunk-without-a-ladder arrangement has been found to be appropriate.  (<u>Id.</u> ¶¶ 1-3, 14.)  If an inmate has a medical condition or physical limitations preventing him from accessing a top bunk, he can notify medical staff, who can order or provide the inmate with appropriate housing conditions, including assignment of a bottom bunk.  (<u>Id.</u> ¶ 15.) Plaintiff did not request a lower bunk accommodation from jail medical staff upon his arrival at the Durango Jail, but he was, however, assigned a lower bunk on October 30, 2010 after his submission of a grievance on the issue.  (<u>Id.</u> ¶¶ 16-17.)

According to Defendant, inmates at Durango Jail are given access to a "dayroom" which is a common area shared by the inmates housed in that particular part of the jail.  (<u>Id.</u> ¶ 18.)  Seats and table space in the dayroom are shared by the inmates using the area at any given time.  (<u>Id.</u> ¶ 19.)  Defendant asserts that when meals are served to the detainees, the shared space should be used in an equitable manner, with those that receive their meals first

1    eating first and then moving to make room for those that are served their meals last.  (Id.

2    ¶ 20.)  In addition, the inmate's bunk is always available for eating or socializing if no other

3    seating is available in the dayroom; inmates are not forced to sit on the floor to eat.  (Id.

4    ¶¶ 21-22.)  Defendant asserts that recent facility inspections of the Durango Jail by the

5    Department of Justice have found the facility to be operating within Federal Guidelines and

6    in compliance with Graves.  (Id. ¶ 1-3.)  Thus, the dayroom seating capacity and

7    configuration have been found to be appropriate.  (Id. ¶ 23.)

8                        **2.    Plaintiff**

9          As noted, Plaintiff did not respond to Defendant's motion.  Because a verified

10   complaint may be used as an affidavit opposing summary judgment if it is based on personal

11   knowledge and sets forth specific facts admissible in evidence, the Court will consider the

12   allegations set forth in Plaintiff's Second Amended Complaint.  See Schroeder v. McDonald,

13   55 F.3d 454, 460 (9th Cir. 1995).  In his Second Amended Complaint, Plaintiff alleged that

14   the cell space was too small for four people, that he was constantly bumping into people and

15   bunks, and that he suffered bruises and mental stress.  (Doc. 13 at 3.)  In Count II, Plaintiff

16   alleged there was no step ladder and as a result of pulling himself up to the top bunk, he

17   suffered severe elbow pain and swelling.  (Id. at 4.)  As to Count III, Plaintiff asserted that

18   he had to sit on a concrete floor for breakfast and dinner because there were too few tables

19   and chairs and that as a result of sitting on the floor, he suffered "tailbone" pain.  (Id. at 5.)

20                        **B.    Analysis**

21         The Court will grant summary judgment to Defendants; the Court finds that although

22   unpleasant or inconvenient, the conditions of confinement did not constitute a Fourteenth

23   Amendment violation.

24          Defendant provides evidence, which Plaintiff does not dispute, that inmates are not

25   confined to their cells at Durango Jail.  They can leave their cells and have access to the day

26   room.  Although Plaintiff complains that there were not enough tables and chairs in the day

27   room for him to eat his meals at a table, he does not claim that he did not have access to the

28   day room at other times.  Nor does Plaintiff rebut Defendant's assertion that Plaintiff could

eat his meals on his bunk and did not have to sit on the floor.  As to the lack of a ladder to access the top bunk, Plaintiff's only real complaint is that it was difficult for him to climb to the top bunk.  He provides no facts demonstrating a risk to his safety nor does he dispute that he did not request a lower bunk when he entered the jail or that he was provided with one after he complained.  There is no evidence that the conditions of confinement were imposed to punish Plaintiff or other detainees.  See Bell, 411 U.S. at 539.  Nor is there evidence that Plaintiff did not receive adequate shelter.  See Hoptowit, 682 F.2d 1246.

The Court finds that these conditions do not rise to the level of a constitutional violation.  The Court will grant summary judgment and terminate the action.

**IT IS ORDERED**:

(1)  The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 32).

(2) Defendant's Motion for Summary Judgment (Doc. 32) is **granted**, and the remaining claims are **dismissed with prejudice**.

(3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

(4) For the reasons set forth herein, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the judgment in this action would not be taken in good faith.

DATED this 8th day of May, 2012.

G. Murray Snow
United States District Judge