WO                                                                                                      SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Corey Demetries Roehl,  )  No. CV 10-2424-PHX-GMS (SPL)
                        )
    Plaintiff,       )  **ORDER**
                        )
vs.                     )
                        )
Joseph M. Arpaio, et al.,)
                        )
    Defendants.      )
                        )

Plaintiff Corey Demetries Roehl, who was in the custody of the Maricopa County Sheriff's Office (MCSO) in Phoenix, Arizona, filed this *pro se* civil rights action against various employees of the Maricopa County Sheriff's Office. (Doc. 13.) The remaining Defendant—Maricopa County Sheriff Joseph M. Arpaio—moves for summary judgment on the remaining claims. (Doc. 32.) Although the Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond, and the Court granted Plaintiff an extension of time, Plaintiff filed no response. (Docs. 35, 38.)[1]

The Court will grant the motion and terminate the case.

**I.   Background**

In his Second Amended Complaint, Plaintiff alleged that cells in the Durango Jail

---

[1] The Court also directed Plaintiff to pay the balance of the filing fee. (Doc. 30.) Plaintiff paid the fee.

were overcrowded; his safety was threatened when he was assigned to a top bunk but not provided a ladder or other means to safely access the top; and because there was insufficient seating in the day room, he was forced to sit on an unsanitary floor to eat. (Doc. 13.) He asserted that his constitutional rights were violated by these conditions and that Arpaio was aware of the conditions and condoned them. (Id.) The Court directed Arpaio to answer and dismissed the other Defendants. (Doc. 14.)

## II.     Legal Standards

### A.     Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. See Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there

is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

### B.     Conditions of Confinement

A pretrial detainee's claim for unconstitutional conditions of confinement arises from the Due Process Clause. Bell v. Wolfish, 441 U.S. 520 (1979). Detainees "retain the rights afforded unincarcerated individuals"; thus, their conditions of confinement must not amount to punishment. Id. at 531. A condition is punitive under Bell if it is "intended to punish," or is "excessive in relation to its non-punitive purpose," or "is employed to achieve objectives that could be accomplished in so many alternative and less harsh conditions." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). Thus, if a particular condition or restriction is not reasonably related to a legitimate governmental objective or is arbitrary or purposeless, a court may infer that the purpose of the action is punishment that may not be inflicted on pretrial detainees. See Bell, 441 U.S. at 539. But if a particular condition or restriction of pretrial detention is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. Legitimate, non-punitive government interests include "ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility." Jones, 393 F.3d at 932 (citing Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993)).

A pretrial detainee's due process rights are at least as great as a convicted prisoner's Eighth Amendment rights. Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003). The Ninth Circuit has held that pretrial detainees' rights are comparable to prisoners' rights under the Eighth Amendment, and so the same standards apply. Frost v. Agnos, 152

F.3d 1124, 1128 (9th Cir. 1998) (relying on Redman v. County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991)). Contra Jones, 393 F.3d at 931 (the "more protective" Fourteenth Amendment standard applies to conditions of confinement when detainees have not been convicted of a crime). As a minimum standard, the Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, shelter, sanitation, and medical care, and take reasonable measures to guarantee inmates' safety. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. See Bell, 441 U.S. at 539 n.21 (noting that a de minimis level of imposition does not rise to a constitutional violation). "[T]he circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Johnson v. Lewis, 217 F. 3d 726, 731 (9th Cir. 2000); see also Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (a filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months).

### III. Motion for Summary Judgment

#### A. Parties' Contentions

##### 1. Defendant[2]

Defendant asserts that MCSO operates its jails under standards set by Federal Guidelines and Federal Court Orders. (Doc. 33, DSOF ¶ 4.) Like all MCSO facilities, the operation of the Durango Jail has been reviewed by the American Jail Association, the American Corrections Association, the U.S. Marshal's Office and the Federal Court system to ensure that the jail facilities meet the required standards for appropriate housing of pretrial detainees; the Durango Jail meets those standards. (Id. ¶ 5.) According to Defendant, recent

---

[2] Defendant's motion is supported by his Statement of Facts (Doc. 33 (DSOF)); the affidavit of Lourdes Hernandez (id., Ex. 1, referencing grievances at Doc. 20); the affidavit of William Wiscombe (Doc. 33, Ex. 2); Second Amended Judgment in Graves v. Arpaio, CV-77-0479-PHX-NVW (id. Ex. 3); the declaration of Peter Muthig (id., Ex. 4) and attached discovery requests (Exs. A-C) and Plaintiff Responses (Exs. D-F).

- 4 -

1  facility inspections by the Department of Justice overseeing Graves v. Arpaio, CV 77-0479-
2  PHX-NVW, have found Durango Jail to be operating within Federal Guidelines and in
3  compliance with Graves. (Id. ¶ 6.)

4  The judgment in Graves applies to the Towers Jail facility and prohibits "more than
5  two pretrial detainees in one cell at the Towers jail if the pretrial detainees usually are
6  confined to their cell for twenty-two hours or more per day." (Id. ¶ 9.) The judgment does
7  not apply to the Durango Jail. (Id. ¶ 8.). Moreover, at Durango, inmates are not physically
8  confined to their cells because all general-population cells have had their doors removed.
9  (Id. ¶ 7.)

10  The cells and general accommodations at the Durango Jail have been reviewed and
11  approved as appropriate by the Department of Justice. (Id. ¶¶ 1-3, 10.) Thus, the housing
12  of four inmates per cell in the Durango Jail has been found to be appropriate. (Id. ¶ 11.)

13  Defendant concedes that the cell where Plaintiff was housed at the Durango Jail had
14  both upper and lower bunks; Plaintiff's cell did not have a ladder or steps providing access
15  to the upper bunk. (Id. ¶¶ 12-13.) But Defendant contends that the Durango Jail facility has
16  been inspected by government agencies, including the Department of Justice, and the double-
17  bunk-without-a-ladder arrangement has been found to be appropriate. (Id. ¶¶ 1-3, 14.) If an
18  inmate has a medical condition or physical limitations preventing him from accessing a top
19  bunk, he can notify medical staff, who can order or provide the inmate with appropriate
20  housing conditions, including assignment of a bottom bunk. (Id. ¶ 15.) Plaintiff did not
21  request a lower bunk accommodation from jail medical staff upon his arrival at the Durango
22  Jail, but he was, however, assigned a lower bunk on October 30, 2010 after his submission
23  of a grievance on the issue. (Id. ¶¶ 16-17.)

24  According to Defendant, inmates at Durango Jail are given access to a "dayroom"
25  which is a common area shared by the inmates housed in that particular part of the jail. (Id.
26  ¶ 18.) Seats and table space in the dayroom are shared by the inmates using the area at any
27  given time. (Id. ¶ 19.) Defendant asserts that when meals are served to the detainees, the
28  shared space should be used in an equitable manner, with those that receive their meals first

1 eating first and then moving to make room for those that are served their meals last. (Id.
2 ¶ 20.) In addition, the inmate's bunk is always available for eating or socializing if no other
3 seating is available in the dayroom; inmates are not forced to sit on the floor to eat. (Id.
4 ¶¶ 21-22.) Defendant asserts that recent facility inspections of the Durango Jail by the
5 Department of Justice have found the facility to be operating within Federal Guidelines and
6 in compliance with Graves. (Id. ¶ 1-3.) Thus, the dayroom seating capacity and
7 configuration have been found to be appropriate. (Id. ¶ 23.)

### 2. Plaintiff

9 As noted, Plaintiff did not respond to Defendant's motion. Because a verified
10 complaint may be used as an affidavit opposing summary judgment if it is based on personal
11 knowledge and sets forth specific facts admissible in evidence, the Court will consider the
12 allegations set forth in Plaintiff's Second Amended Complaint. See Schroeder v. McDonald,
13 55 F.3d 454, 460 (9th Cir. 1995). In his Second Amended Complaint, Plaintiff alleged that
14 the cell space was too small for four people, that he was constantly bumping into people and
15 bunks, and that he suffered bruises and mental stress. (Doc. 13 at 3.) In Count II, Plaintiff
16 alleged there was no step ladder and as a result of pulling himself up to the top bunk, he
17 suffered severe elbow pain and swelling. (Id. at 4.) As to Count III, Plaintiff asserted that
18 he had to sit on a concrete floor for breakfast and dinner because there were too few tables
19 and chairs and that as a result of sitting on the floor, he suffered "tailbone" pain. (Id. at 5.)

### B. Analysis

21 The Court will grant summary judgment to Defendants; the Court finds that although
22 unpleasant or inconvenient, the conditions of confinement did not constitute a Fourteenth
23 Amendment violation.

24 Defendant provides evidence, which Plaintiff does not dispute, that inmates are not
25 confined to their cells at Durango Jail. They can leave their cells and have access to the day
26 room. Although Plaintiff complains that there were not enough tables and chairs in the day
27 room for him to eat his meals at a table, he does not claim that he did not have access to the
28 day room at other times. Nor does Plaintiff rebut Defendant's assertion that Plaintiff could

eat his meals on his bunk and did not have to sit on the floor. As to the lack of a ladder to access the top bunk, Plaintiff's only real complaint is that it was difficult for him to climb to the top bunk. He provides no facts demonstrating a risk to his safety nor does he dispute that he did not request a lower bunk when he entered the jail or that he was provided with one after he complained. There is no evidence that the conditions of confinement were imposed to punish Plaintiff or other detainees. See Bell, 411 U.S. at 539. Nor is there evidence that Plaintiff did not receive adequate shelter. See Hoptowit, 682 F.2d 1246.

The Court finds that these conditions do not rise to the level of a constitutional violation. The Court will grant summary judgment and terminate the action.

**IT IS ORDERED**:

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 32).

(2) Defendant's Motion for Summary Judgment (Doc. 32) is **granted**, and the remaining claims are **dismissed with prejudice**.

(3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

(4) For the reasons set forth herein, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the judgment in this action would not be taken in good faith.

DATED this 8th day of May, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge